UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER O. C.,** | Civil Action No. 20-4622 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Peter O. C., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed responses to the petition and motion (ECF No. 7), to which Petitioner has replied. (ECF No. 9). For the following reasons, this Court will deny the petition without prejudice and will deny the motion as moot in light of the denial of Petitioner's habeas petition.

**I. BACKGROUND**

Petitioner is a native and citizen of Ghana who was admitted to the United States for a period not to exceed six months in May 2014. (Document 6 attached to ECF No. 7 at 6). Petitioner overstayed his visa, however, and illegally remained in the United States after its expiration. (*Id.*). Petitioner was thereafter convicted of receiving stolen property with a value of more than $75,000 on August 15, 2018. (*Id.*). Petitioner was sentenced to seven years imprisonment as a result. (*Id.*). On January 23, 2020, Petitioner was taken into immigration custody and placed in removal proceedings based on his criminal history and overstay. (*Id.* at 3-9). Petitioner has been detained

pursuant to the Government's mandatory detention authority under 8 U.S.C. § 1226(a) since that time. (*Id.* at 11). Petitioner suffers from hypertension and obesity, both of which he, through his medical expert, contends place him at risk of severe complications were he to become infected with COVID-19. (*See* Document 8 attached to ECF No. 9). Petitioner's hypertension is being treated, however, at the facility – by the admission of Petitioner's own expert, he has been treated at least twice for that issue during the month of April, during which he was provided medication and was seen by medical staff including a doctor.[1] (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

---

[1] Petitioner's medical expert does contend that the treatment may not have been sufficient, or that the jail's medical staff may not have done enough diagnostic work on Petitioner during these sick visits. (Document 8 attached to ECF No. 9 at 4). The expert makes these inferences, however, largely based on what is *not* stated in the brief notes contained in Petitioner's medical records, and his assumption that Petitioner's vital signs were not checked because it is not explicitly noted in Petitioner's chart, as well as the expert's unfamiliarity with a term used by jail medical staff. (*Id.*). The record of this matter is at best unclear whether Petitioner's expert's inferences are accurate.

**B. Analysis**

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from prison because he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his medical history and the threat posed by the COVID-19 epidemic. As this Court recently explained, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's conditions of confinement, claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g.*, *Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v.*

*Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the

>>conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))].  The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective.  *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish.  *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime.  *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020).

In this matter, Petitioner is detained pursuant to the Government's mandatory detention authority pursuant to 8 U.S.C. § 1226(c), which applies to aliens such as Petitioner who have qualifying convictions.  As the Supreme Court has held, mandatory detention under § 1226(c) "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," an interest that the Court went to considerable lengths was compelling and a more than adequate basis for mandatory detention throughout the pendency of those proceedings. *See Demore*, 538 U.S. at 518-28.  Both the Third Circuit and this Court have further recognized that the statute further serves the purpose of ensuring that criminal aliens do not present a danger to the community while they are in removal proceedings.  *See, e.g., Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015); *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018).  Indeed, these interests are so compelling that this Court has recognized that the statute will ordinarily support continued detention without so much as a bond hearing for well over

a year. *Id.* There is thus no question that detention under the statute both serves a legitimate government interest.

Turning to the conditions of confinement, it is clear that the jail in which Petitioner is detained has taken numerous concrete steps to alleviate and mitigate the risk COVID-19 presents to its inmate population. The jail has increased the availability of medical staff; insured nurses, practitioners, and doctors are always either on hand or on call at all times; limited or eliminated entrance into the facility of outside vendors, volunteers, and visitors; has required medical screenings for all incoming detainees and staff members including temperature checks upon arrival; begun the daily monitoring and separate housing of those detainees who suffer from health conditions putting them at high risk under CDC guidelines; established a quarantine area for those who become infected; increased supplies on site including cleaning supplies and COVID-19 testing kits; increased cleaning staff and has begun sanitizing and cleaning housing units "no less than three times per day;" provided "unlimited" soap and water access for all detainees and provided disinfectant spray upon request under the supervision of jail staff; begun placing new arrivals in quarantine for fourteen days before placing them in general population; provided masks, gloves, and full protective equipment to jail staff; and has begun rolling out "rapid COVID-19 testing for its entire population" to support the jail's quarantine and containment strategy. (Document 5 attached to ECF No. 7 at 1-14). The jail has also put into place policies for handling infected inmates including immediate medical evaluations for those showing symptoms, providing daily sick calls to detainees, providing surgical masks to those with signs or symptoms of respiratory illness, full testing at University Hospital for any detainee who shows moderate to severe symptoms, the quarantining of those who show even mild symptoms, and the isolation of detainees who have tested positive for the virus. (*Id.* at 8-10). Where warranted, antiviral

medications are provided, and regardless of the need for medications, those who test positive or show even mild symptoms are quarantined for fourteen days in single occupancy cells "to ensure social distancing." (*Id.* at 9-10). All of these measures taken to limit or alleviate the effects of COVID-19 on the jail population clearly show that the conditions to which Petitioner has been subjected are not excessive in relation to the Government's interest in detaining criminal aliens, and that the conditions under which Petitioner has been confined are instead rationally related to a legitimate government interest and therefore pass constitutional muster. As Petitioner has not otherwise shown any express intent to punish him, Petitioner's conditions of confinement claim thus fails.

Petitioner's claim fairs no better when treated as a direct medical claim. Both the concrete steps outlined above and the specific treatment and medication Petitioner has received indicate that the jail staff have not been deliberately indifferent to his needs, but have instead taken steps to protect him and have treated his medical issues when he has brought them to the attention of the medical staff. The disagreement with the treatment he received expressed by Petitioner's medical expert is insufficient to raise Petitioner's dispute to the level of a constitutional violation, *White v. Napolean*, 897 F.2d at 110, and is patently insufficient to warrant the extreme form of relief Petitioner requests in light of Petitioner's criminal history, the treatment Petitioner has received, and the concrete steps the jail has taken to protect Petitioner. *V.S.*, 2020 WL 1921936 at *3 ("That these steps do not guarantee Petitioner will remain healthy and free of the disease is immaterial, the constitution requires no such perfection."); *see also Sacal-Micha;* 2020 WL 1518861 at *6. As this Court finds that Petitioner has neither shown that jail staff have been deliberately indifferent to his medical needs, nor that he has been subjected to unconstitutional conditions of

confinement, Petitioner's habeas petition is denied, and Petitioner's motion seeking a temporary restraining order is denied as moot in light of the denial of this matter.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE and his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition.  An appropriate order follows.

Dated: May 7, 2020                                        *s/Susan D. Wigenton*
                                                                       Hon. Susan D. Wigenton,
                                                                       United States District Judge